**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JANICE E. BURKE,**

                                **Plaintiff,**


        **v.**                                        **5:07-CV-624**
                                                      **(FJS/DEP)**

**CICERO POLICE DEPARTMENT; DEPUTY K.**
**KRUGER, Deputy for Cicero Police Department;**
**DEPUTY BOLLINGER, Deputy for Cicero Police**
**Department; DEPUTY WAFER, Deputy for Cicero**
**Police Department; GILLETTE ROAD MIDDLE**
**SCHOOL; and AUDREY GANGLOFF, Principal**
**of Gillette Road Middle School,**

                                **Defendants.**

_____

**APPEARANCES**                          **OF COUNSEL**

**JANICE E. BURKE**
Manlius, New York 13104
Plaintiff _pro se_

**ONONDAGA COUNTY**                        **CAROL L. RHINEHART, ESQ.**
**DEPARTMENT OF LAW**
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, New York 13202
Attorneys for Defendants Kruger,
Bollinger and Wafer

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On June 12, 2007, Plaintiff filed this action under 42 U.S.C. § 1983 alleging violations of

her civil rights resulting from incidents that occurred on September 8 and September 10, 2004.

The amended complaint contains eight causes of action that allege, among other things, false arrest, malicious prosecution, excessive force, illegal search and seizure, and abuse of process. On September 20, 2008, the Court granted Defendant Cicero Police Department's motion to dismiss and granted Defendant Gillette Road Middle School's and Defendant Gangloff's motions for summary judgment. Accordingly, the only remaining Defendants are Deputy Kruger, Deputy Bollinger, and Deputy Wafer ("Defendants").[1]

Currently before the Court is Defendants' unopposed motion for summary judgment.[2]

## II. BACKGROUND[3]

Plaintiff was her niece's guardian when her niece attended Gillette Road Middle School during the 2004-2005 academic school year. On September 8, 2004, at approximately 2:20 p.m., Plaintiff arrived at the school and requested that school officials release her niece from school at that time because she needed to drop her niece off at a babysitter's in order to report to work on time.

Plaintiff requested that someone contact her niece using the school's public address

_____

[1] In her amended complaint, Plaintiff asserts that these Defendants are employees of the Cicero Police Department. They are, however, Deputy Sheriffs in the Onondaga County Sheriff's Department.

[2] The amended complaint contains eight causes of action. Defendants moved for summary judgment on all but the third cause of action. The third cause of action alleges that Defendants illegally arrested Plaintiff within her home without an arrest warrant. However, because Plaintiff's other causes of action implicate the same interests asserted in the third cause of action, the Court has treated this motion as a motion for summary judgment with respect to all of Plaintiff's causes of action.

[3] Unless otherwise indicated, the Court has taken the "Background" facts from Defendants' Statement of Material Facts, *see* Dkt. No. 45, and Plaintiff's Amended Complaint, *see* Dkt. No. 4.

system.  Plaintiff then asked Defendant Kruger to allow her to proceed down the hall and through a door at the end of the hall to the back of the school, where her niece was located. Defendant Kruger told Plaintiff that it was against school policy to allow parents to roam the halls while classes were in session.  Nonetheless, Plaintiff attempted to proceed down the hall, and Defendant Kruger blocked her path.  Shortly thereafter, a staff member located Plaintiff's niece; and Plaintiff and her niece left the premises.  Prior to leaving, Plaintiff indicated that she would pick up her niece at 2:30 p.m. every day for the remainder of the year, despite the fact that classes did not end until 2:40 p.m.

At some point prior to September 10, 2004, Defendant Gangloff, Principal of Defendant Gillette Road Middle School, telephoned Plaintiff and attempted to schedule a meeting with her to discuss her request to pick up her niece early every day.  Plaintiff indicated that she could not meet with Defendant Gangloff that week.

On September 10, 2004, at approximately 12:10 p.m., Defendants Kruger, Bollinger and Wafer went to Plaintiff's residence to issue Plaintiff an appearance ticket for Obstruction of Governmental Administration in the Second Degree and Harassment in the Second Degree. When Defendants asked Plaintiff to come outside to discuss the incidents of September 8, 2004, Plaintiff refused.  Defendants then told Plaintiff that she was under arrest and that she needed to step outside so that they could issue her an appearance ticket.  When Plaintiff refused, Defendants attempted to gain entry into Plaintiff's residence.  After these attempts proved unsuccessful, "Defendants used force to gain entrance to the residence," which entailed Defendant Wafer kicking in the dead-bolted front door.

Upon entry, Defendants informed Plaintiff that she was under arrest and ordered her to

-3-

drop the telephone that was in her hand.  Plaintiff struggled when Defendant Wafer attempted to

place her in handcuffs and, thereafter, complained that the handcuffs were secured too tightly.

Plaintiff was taken outside, and Defendant Wafer did a "pat down" search prior to placing

Plaintiff in the patrol car.

On or about November 15, 2006, Plaintiff accepted an adjournment in contemplation of

Once in the patrol car, Defendants gathered information from Plaintiff and made

arrangements for her niece.  Defendant Wafer read Plaintiff her *Miranda* warnings at

approximately 12:50 p.m., and Plaintiff refused to provide any statements.  Plaintiff was

arraigned at 3:00 p.m. at the Town of Cicero Court and was charged with Obstructing

Governmental Administration in the Second Degree, Harassment in the Second Degree, and

Resisting Arrest.

On or about November 15, 2006, Plaintiff accepted an adjournment in contemplation of

dismissal of the criminal charges, and the charges were dismissed on May 14, 2007.

### III. DISCUSSION

**A.    Standard of review**

### *1. Summary judgment standard*

A court may grant a motion for summary judgment only if the court determines that there

is no genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at

36-37 (quoting *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d at 58) (other

citation omitted). Furthermore, in assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).

Federal Rule of Civil Procedure 56 provides that, if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, *if appropriate,* shall be entered against the adverse party." Fed. R. Civ. P. 56(e)(2) (emphasis added). The Second Circuit has made clear, however, that where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial[,]" *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001), and that he is entitled to judgment as a matter of law, *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

Moreover, in determining whether the moving party has met its burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. Rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### 2. *Relief under 42 U.S.C. § 1983*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

**B.     First cause of action**

Plaintiff's first cause of action alleges conduct relating solely to Defendant Gangloff. Since the Court dismissed Defendant Gangloff from this action on September 20, 2008, and the allegations do not allege any misconduct on Defendants' part, the Court grants Defendants' motion for summary judgment as to the first cause of action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted).

**C.     Second cause of action**

The second cause of action states that

> Deputy Kruger failed to identify herself as a Police Officer on
> September 8, 2004.  When I left the school on September 8, 2004,
> I left under the assumption that she was a security guard which is
> why I couldn't understand why she would not escort [me]
> approximately thirty to fifty (30-50) feet to the door leading to the
> back playground.  Her unreasonable demand that I walk around the
> building to get my niece were [sic] a contributing factor to me
> arriving to work late which eventually lead [sic] to my dismissal
> from my job.

*See* Amended Complaint at 5.

This cause of action fails to allege any conduct or omission on the part of Defendants

Bollinger and Wafer.  Accordingly, the Court grants Defendant Bollinger's and Defendant

Wafer's motion for summary judgment with respect to this cause of action.

Regarding Defendant Kruger, even when reading this allegation in the light most

favorable to Plaintiff, she has not alleged any cognizable constitutional deprivation.  It is well-

established that school authorities have the right to limit access to school property, and the courts

afford great deference to their decisions to do so.  *See Silano v. Sag Harbor Union Free Sch.*

*Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994) (holding that "[t]he Superintendent's order

forbidding Silano from entering the school grounds also fails to implicate a protected liberty or

property interest"); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507

(1969) (holding that states and school officials have "comprehensive authority," "consistent with

fundamental constitutional safeguards, to prescribe and control conduct in the schools" (citations

omitted)).

Defendant Kruger established that she was merely implementing this reasonable school

policy that, in no way, impacted any of Plaintiff's cognizable constitutional rights.  Accordingly,

the Court grants Defendant Kruger's motion for summary judgment as to the second cause of action.

### D.      Fourth amendment violations[4]

#### 1. Unlawful seizure/false arrest and imprisonment

In Plaintiff's third, fifth, and sixth causes of action, she alleges claims for unlawful seizure/false arrest and imprisonment.  *See* Amended Complaint at 5-7.  "A § 1983 claim for false arrest, . . . including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law . . . ."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  Under both New York law and the Fourth Amendment to the United States Constitution, the elements of an action for false arrest are that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted).

Defendants do not contest the first three elements.  Accordingly, the only question is whether Plaintiff's warrantless arrest inside her home was "privileged" or "justified."  "'Justification may be established by showing that the arrest was based on probable cause.'"  *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted).  Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information of facts and

---

[4] Although Defendants did not move for summary judgment as to Plaintiff's third cause of action in which she alleges Fourth Amendment violations, several of Plaintiff's other causes of action, when read liberally, allege Fourth Amendment violations as well.  Accordingly, the Court will address all of Plaintiff's Fourth Amendment claims.

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation omitted).  Probable cause alone, however, does not justify a warrantless arrest in a home.  *See Loria v. Gorman*, 306 F.3d 1271, 1283-84 (2d Cir. 2002).

A warrantless entry into a home requires "exigent circumstances" justifying the intrusion.  *See id.*  The test for determining whether a warrantless entry into a home is justified by exigent circumstances is an objective one, which asks '"whether law enforcement agents were confronted by an "urgent need" to render aid or take action.'"  *United States v. Gordils,* 982 F.2d 64, 69 (2d Cir. 1992) (quotation omitted).  When the arrest is effected by an unannounced intrusion into the home, with or without an arrest warrant, the courts are even less likely to find such an arrest reasonable under the Fourth Amendment.  *See United States v. Mapp*, 476 F.2d 67, 75 (2d Cir. 1973) (quoting [*Ker v. California*, 374 U.S. 23,]  47, [83 S. Ct. 1623,] 1636 [(1963) (Brennan, J., concurring)]).

In *Gordils,* the Second Circuit set forth the following six factors for courts to use as guidelines for determining whether or not such exigent circumstances exist:

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause . . . to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry."

982 F.2d at 69 (quotation omitted).  The court noted, however, that these factors were not exhaustive and that the presence or absence of any one factor was not conclusive.  *See id.*

(quotation omitted).  Therefore, under certain circumstances, the presence of a single factor will

suffice, while at other times it will require a combination of several of these factors.  *See United*

*States v. MacDonald,* 916 F.2d 766, 770 (2d Cir.1990) (citations omitted).

Although Defendants clearly had probable cause to believe that Plaintiff committed

offenses on September 8, 2004, and that she was in the premises, no other factors weigh in favor

of finding that Defendants' actions were reasonable.  As mentioned, Plaintiff was charged with a

nonviolent misdemeanor and violation.  Courts are loath to find warrantless arrests in a home

reasonable when the underlying offenses are nonviolent misdemeanors.  *See Welsh v. Wisconsin*,

466 U.S. 740, 753 (1984) (noting "that it is difficult to conceive of a warrantless home arrest that

would not be unreasonable under the Fourth Amendment when the underlying offense is

extremely minor"); *see also Loria*, 306 F.3d at 1284 (holding that the offense was obstruction of

government administration is not "sufficiently grave or violent to provide the police with reason

to ignore the warrant requirement").  As to the second factor, it is apparent that Defendants had

no objectively reasonable belief that Plaintiff was armed.[5]

As to the fifth factor, Plaintiff posed no serious risk of flight.  Defendants admit that,

_____

[5] Defendant Kruger claims that she was concerned for her safety because of the presence of a "pan of food."  Specifically, she stated that, upon kicking in the door to Plaintiff's residence when Plaintiff refused to come out or allow Defendants to enter, "I could see that she was holding the receiver of the kitchen telephone in her hands.  The receiver was attached to a very long telephone cord.  I also observed a pan of food sitting on the top of the stove.  This was of some concern because it could also be used as a weapon."  *See* Affidavit of Deputy Kathleen Kruger sworn to September 29, 2009 ("Kruger Aff."), at ¶ 26.

Although there is no doubt that a frying pan could be used as a weapon in many situations, the only possible "threat" that arose from the frying pan at issue here occurred after Defendants broke down Plaintiff's door.  Accordingly, the presence of this frying pan did not provide an exigent circumstance justifying the warrantless entry into Plaintiff's home.

upon forcibly entering Plaintiff's home, she was in the process of making a phone call in her kitchen.  *See* Defendants' Statement of Material Facts at ¶¶ 31-32.  Such actions clearly do not show an intent to flee from the authorities.  Finally, as to the sixth factor, Defendants admit to using force to enter Plaintiff's home.  *See id.* at ¶ 31.

Moreover, Plaintiff asserts that Defendants did not state that they were there to arrest her until after forcibly entering her home.  *See* Transcript of Deposition of Janice Burke dated June 25, 2009 ("Burke Tr.") at 32.  She asserts that Defendants only stated that they were there to issue her an appearance ticket for the events of September 8, 2004., thereby making Defendants' entry unannounced.  *See Ker v. California*, 374 U.S. 23, 47 (1963) (Brennan, J., concurring).

Contrary to Defendants' assertions, "such a warrant-less arrest can form the basis of a false arrest claim under 42 U.S.C. § 1983 even if probable cause is present."  *Durney v. City of N.Y.*, No. 91-CV-3959, 1996 WL 1057148, *7 (E.D.N.Y. Oct. 25, 1996) (citing *Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991); *Dzinanka v. County of Suffolk*, 932 F. Supp. 59 (E.D.N.Y. 1996)).  It is without question that Defendants had probable cause to issue Plaintiff an appearance ticket and arrest her for the September 8, 2008 incident at the school.  Beyond that, however, Defendants have not established exigent circumstances to justify their forcible entry into Plaintiff's home to effect a warrantless arrest.  Plaintiff's refusal to exit her home to allow the officers to serve her with an appearance ticket is not an exigent circumstance justifying their conduct.

Based on this record, the Court concludes that no exigent circumstances were present to justify Defendants' actions and that issues of fact exist that preclude summary judgment as to Plaintiff's unlawful seizure/false arrest claims.

### 2. Unlawful search

Plaintiff alleges, in her fifth cause of action, that, after she was arrested and handcuffed, she was "groped by a male officer on [her] front lawn in view of all [her] neighbors, when two female officers were available to perform the frisk." *See* Amended Complaint at 6. Moreover, she claims that Defendants' actions "physically violated" her. *See id.* at 4. Based on this language, it appears that Plaintiff is asserting that Defendants' search of her person violated the Fourth Amendment because it was inappropriate in nature and because a male officer performed the search when female officers were present and available to perform it. Moreover, even if the Court could not reasonably interpret Plaintiff's fifth cause of action as asserting an unlawful search claim, Plaintiff clearly asserts such a claim in her third cause of action.

"The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures." *Ker*, 374 U.S. at 41 (citations omitted). There is no requirement that the arrest be pursuant to the authority of an arrest warrant; only that it be lawful. *See id.* (citations omitted); *see also Perez v. City of N.Y.*, No. 07 Civ. 10319, 2009 WL 1616374, *6 (S.D.N.Y. June 8, 2009) (citations omitted).

It is firmly established that the Fourth Amendment only proscribes unreasonable searches and seizures. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (citations omitted). The permissibility of a search "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (quotation and other citation omitted). Moreover, when a plaintiff claims that inappropriate touching has occurred during a search, the relevant inquiry is whether the officer's actions ran

-12-

afoul of the Fourth Amendment.  *See Garcia v. N.Y.S. Police Investigator Aguiar*, 138 F. Supp.

2d 298, 303-04 (N.D.N.Y. 2001) (citations omitted).

As discussed above, Defendants failed to establish that Plaintiff's arrest was lawful.  As

such, if the arrest was unlawful, any search that Defendants conducted was unreasonable.

Contrary to Plaintiff's assertions, however, if Defendants conducted this search incident

to a lawful arrest, Defendants' conduct would have been reasonable.  Courts have repeatedly held

that a pat-down search incident to a lawful arrest conducted by an officer of the opposite sex,

does not, absent some additional evidence of improper conduct during the search, convert a

lawful search incident to arrest into an unlawful one.  *See, e.g., Stokes v. City of N.Y.*, 05-CV-

0007, 2007 WL 1300983, *12 n.9 (E.D.N.Y. May 3, 2007) (citing cases); *Garcia*, 138 F. Supp.

2d at 304.

At her deposition, Plaintiff stated that Defendant Wafer was "patting and squeezing" her

legs and doing the same from "my breasts on down."  *See* Burke Tr. at 45.  Plaintiff made clear

that she was insulted and embarrassed by what occurred but fails to state that the conduct was

inappropriate, beyond the fact that a male officer conducted the search.  *See Garcia*, 138 F.

Supp. 2d at 304 (finding a search that an officer of the opposite sex conducted reasonable when

the plaintiff's "own deposition testimony revealed that the pat frisk consisted of patting down one

leg, moving up her leg across her crotch and down the other leg, placing the side of his little

finger down the middle of her breasts, checking under each breast, and then patting Plaintiff's

rear pants pockets").

Since there are issues of fact about whether the arrest was lawful, the Court cannot

determine whether this search was unreasonable.  If, at trial, the jury determines that the arrest

was unlawful, this search would likewise be unlawful.  If, however, the jury determines that the arrest was lawful, then this search was also lawful.

Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's cause of action for illegal search as to all Defendants.  Although Defendant Wafer conducted the search, Defendants Bollinger and Kruger may still be held liable because an officer who idly observes an illegal search and does nothing to prevent the violation can be held liable for his inaction under section 1983.  *See, e.g., United States v. Couch*, 378 F. Supp. 2d 50, 60-61 (N.D.N.Y. 2005).

### 3. Malicious prosecution

In her third and seventh causes of action, Plaintiff asserts a claim for malicious prosecution.

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  To assert a Fourth Amendment claim for malicious prosecution under § 1983, a plaintiff must show a deprivation of her liberty consistent with the concept of "seizure," so as to ensure that the harm suffered is of "constitutional proportions."  *See id.*

The elements of malicious prosecution under section 1983 are virtually identical to the elements of the same claim under New York law.  *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (citations omitted).  To state a cause of action for malicious prosecution under section 1983, the plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against

plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for

commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'"

*Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quotation omitted).  Defendants do not

contest that they initiated or continued a criminal proceeding against Plaintiff.  Accordingly,

only the second, third, and fourth elements are at issue.

    One of the essential elements of a malicious prosecution claim is that the criminal

proceeding terminate in the plaintiff's favor.  *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.

1997).  "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor

of the accused, for these purposes, only when its final disposition is such as to indicate the

innocence of the accused."  *Id.* at 948 (citations omitted).  Certain types of dismissal that

preclude further prosecution on the same charges are not deemed favorable for purposes of a

malicious prosecution claim.  *See id.* (citations omitted).

    The New York Court of Appeals has held that an adjournment in contemplation of

dismissal – a disposition that requires the consent of the prosecutor, the accused, and the court –

is not a favorable termination as contemplated in a malicious prosecution action.  *See Hollender

v. Trump Vil. Coop., Inc.*, 58 N.Y.2d 420, 426 (1983) (citations omitted).  This is so because

such a dismissal does not indicate the accused's innocence, especially in light of the fact that the

charges are only dismissed upon the expiration of a six-month period wherein the accused does

not engage in any additional illegal conduct.  *See id.* at 425-26.

    In the present matter, Plaintiff accepted adjournment in contemplation of dismissal on

November 15, 2006.  *See* Amended Complaint at 5; *see also* Burke Tr. at 65, 67-68.  The facts

surrounding this dismissal do not indicate that Plaintiff was innocent of the crimes charged.  As

such, the Court grants Defendants' motion for summary judgment as to Plaintiff's cause of action for malicious prosecution.

### 4. Abuse of process

The torts of malicious prosecution and abuse of process are very similar in nature.  *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  "While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'"  *Id.* (quotation omitted).  Abuse of process is the use of "legal process to attain some collateral objective . . . ."  *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 402 (1975) (citations omitted).  Both malicious prosecution and abuse of process are recognized claims under section 1983.  *See Cook*, 41 F.3d at 80 (citations omitted).

The federal courts look to state law to determine the elements of an abuse of process claim.  *See id.* (citations omitted).  Pursuant to New York Law, an abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Id.* (citations omitted).  Unlike malicious prosecution, favorable termination of the criminal proceeding is not an element of an abuse of process claim.  *See Dallas v. Goldberg*, 95 Civ. 9076, 2002 WL 1013291, *12 (S.D.N.Y. May 20, 2002).

Moreover, the plaintiff must allege that the process that the defendants issued was improperly used after it was issued, not merely that the defendants acted with malice in bringing the action.  *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (citation omitted).  As the Second

Circuit has explained, "it is not sufficient for a plaintiff to allege that the defendant[ ] [was] seeking to retaliate against him by pursuing his arrest and prosecution.  Instead, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution."  *Savino*, 331 F.3d at 77.

Here, Plaintiff states that, because of "my refusal to allow Deputies Kruger, Wafer and Bollinger into my home on September 13, 2004, they intentional[ly] violated/abuse of process (sic)."  *See* Amended Complaint at 6.  Plaintiff contends that her refusal to heed to Defendant Kruger's requests on September 8, 2004, and her refusal to allow Defendants into her home on September 10, 2004, motivated Defendants to abuse process.  *See id.*

Plaintiff fails to allege facts sufficient to establish that Defendants acted "in order to obtain a collateral objective that [was] outside the legitimate ends of process."  *Cook*, 41 F.3d at 80 (citations omitted).  She does not allege that Defendants' actions were aimed at achieving some collateral purpose in addition to her criminal prosecution.  *See Savino*, 331 F.3d at 77.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for abuse of process.

### 5. Excessive force

Plaintiff asserts that Defendants used excessive force to take her into custody.  *See* Amended Complaint at 7.  She alleges that, after she refused to step outside or to allow Defendants into her home, "Deputy Wafer . . . kicked in my front door (which has a dead bolt lock) and grabbed the phone from my hand.  He threw the phone on the floor and forcibly grabbed my right wrist pulled it behind my back and handcuffed me."  *See id.* at 4.  Moreover,

Plaintiff asserts that Defendants placed the handcuffs too tightly around her wrists and that Defendant Wafer forcefully turned her body in the police car so that he could take pictures of her wrists. *See id.*

To establish a section 1983 claim for excessive force, a plaintiff has the burden of showing that, under the Fourth Amendment, the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation. *See Anderson v. Branen*, 17 F.3d 552, 559-60 (2d Cir. 1994). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).  Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable. *See O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003).

Plaintiff's allegations are sufficient to create issues of fact as to the objective reasonableness of the degree of force that Defendants used.  Plaintiff asserts that she "was not resisting being handcuffed" and that Defendant Wafer "threw the phone to the floor and forcibly grabbed my right wrist pulled it behind my back and handcuffed me."  *See* Amended Complaint at 4.  She further asserts that she sustained both physical and mental injuries from this use of force and that these injuries were compounded when Defendants ignored her complaints that the handcuffs were unreasonably tight. *See id.* at 4, 6.  Such allegations are sufficient to survive a

motion for summary judgment.  *See, e.g., Robinson v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that allegations that police yanked arrestee out of a car, threw her against it and pinned her arm behind her back were sufficient to withstand summary judgment); *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (holding that, "[g]iven *Graham*'s teaching that each case be decided on its own facts, we reject defendants' invitation to adopt a *per se* rule that use of handcuffs in effecting an arrest is always reasonable").

Moreover, contrary to Defendants' assertions, Plaintiff has alleged sufficient injury to survive summary judgment on this claim.  *See, e.g., Yang Feng Zhao v. City of N.Y.*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (holding that, to survive a motion for summary judgment, the plaintiff does not need long-term or documented injuries as a predicate to liability); *Espada v. Schneider*, 522 F. Supp. 2d 544, 555-56 & n.12 (S.D.N.Y. 2007) (indicating that an excessive force claim under the Fourth Amendment can yield a nominal damages award).

Defendants assert that Plaintiff admitted to resisting arrest and that this justifies their use of force.  *See* Defendants' Memorandum of Law at 13.  Contrary to Defendants' assertions, Plaintiff's admission that she was "walking over to" and attempting to reach "over to the stove" to turn it off while Defendants were attempting to take her into custody is not an admission of resisting arrest.

As such, because issues of fact exist, the Court denies Defendants' motion for summary judgment as to Plaintiff's excessive force claim.[6]

---

[6] There is authority to support the proposition that, if the plaintiff is asserting that, "because the arrest was illegal, any force applied was unconstitutional," the court should "view her illegal arrest and excessive-force claims as merged . . . ."  *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1298-99 (M.D. Ala. 2009); *see also Bashir v. Rockdale County, Ga.*, 445

(continued...)

-19-

### 6. Qualified immunity for excessive force claim

The courts conduct a two part inquiry to determine if an official is entitled to qualified immunity.  The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[7]  If the court decides that the officer's

---

[6](...continued)

F.3d 1323, 1331-32 (11th Cir. 2006) (holding that, "'[u]nder this Circuit's law . . ., a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim'" (quotation omitted)).  Although these claims may be merged, the plaintiff is still able to recover damages for any force that the defendants used during the illegal arrest.  *See Bashir*, 445 F.3d at 1332 (stating that "the damages recoverable on an unlawful arrest claim 'include damages suffered because of the use of force in effecting the arrest'" (quotation omitted)).  Both claims are viable and do not merge, however, when the claim is not merely that any use of force in an illegal arrest is unreasonable, but that "the quantum of force used under the circumstances" was independently unreasonable.  *See id.* (citation omitted).

Here, Plaintiff is not merely claiming that any force that Defendants used was unreasonable because the arrest was illegal but asserts a separate excessive force claim.  Accordingly, Plaintiff's excessive force and illegal arrest claims do not merge.

[7] In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court reconsidered *Saucier's* two-step procedure for resolving the issue of qualified immunity.  *See id.* at 815-22.  The Court held that "the sequence set forth [in *Saucier*] is often appropriate, [but] it should no longer be regarded as mandatory," *id.* at 818, and that "courts should have the discretion to decide whether [the *Saucier*] procedure is worthwhile in particular cases," *id.* at 821.  Therefore, a district court may now address a qualified immunity issue by concluding that a right is not clearly established at the time of a government official's actions, without first deciding whether the official could reasonably be viewed as violating that right.  *See id.* at 818.  Accordingly, *Saucier* has been overruled to the extent that it required that "a qualified immunity defense . . . be considered in proper sequence[,]" *Saucier*, 533 U.S. at 200, but it remains good law where it is appropriate for a court to apply the two-step procedure.

The relevant question after *Pearson* is "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 129 S. Ct. at 818.  In *Pearson*, the Supreme Court recognized the continuing importance of the two-step procedure for cases where it "'may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to

(continued...)

conduct violated a right, the court must analyze the objective reasonableness of the officer's belief in the lawfulness of his actions. *See Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). If the officer reasonably believed that his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken. *See id.*; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that, "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law").

Here, Plaintiff is asserting the constitutional right to be free from excessive force. It is without question that this right is firmly established. As discussed above, Defendants fall far short of establishing, as a matter of law, that a reasonable officer at this scene would have conducted himself in this manner or used such force to effect the arrest of a person who allegedly committed a non-violent misdemeanor and violation several days prior. *See Graham*, 490 U.S. at 396. Although Plaintiff may only be entitled to nominal damages depending on the severity of injury she is able to prove, her claim nonetheless survives summary judgment.

Accordingly, the Court denies Defendants' motion for summary judgment on the ground of qualified immunity.[8]

---

[7](...continued)
be.'" *Id.* (quotation omitted); *see also Lane v. Carpinello*, No. 9:07-cv-751, 2009 WL 3074344, *10-*11 (N.D.N.Y. Sept. 24, 2009).

[8] Although Defendants did not raise a qualified immunity defense in response to any of the other causes of action, the defense would have failed for the same reasons. Defendants have pointed to no facts that would "reasonably warrant" the intrusion into Plaintiff's home or the subsequent search of her body. Nor have they demonstrated the objective reasonableness of their actions or that officers of reasonable competence could disagree on whether probable cause existed for their actions. *See Thomas v. Culberg,* 741 F. Supp. 77, 81 (S.D.N.Y. 1990) (quoting *Robison,* 821 F.2d at 921).

**E.**      **Fourth cause of action: Failure to give *Miranda* warning**

In her fourth cause of action, Plaintiff asserts that she "was never read her *Miranda*

Rights, allowed to make a phone call, finger printed, or photographed."  *See* Amended

Complaint at 6.

*Miranda* warnings are not a right explicitly stated in the Fifth Amendment but are merely

procedural safeguards.  *See Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (citing

*Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 1624, 16 L. Ed. 2d 694 (1966)).  As

such, "[t]he remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-

incriminating statements."  *Id.* (citation omitted).  Therefore, a law enforcement official's failure

to administer *Miranda* warnings prior to subjecting a person to custodial interrogation does not

give rise to a constitutional deprivation provided that the government does not use any

involuntary statements that the declarant made against her in a criminal proceeding.  *See id.*

Plaintiff fails to allege that she made any statement while in custody or that the

Government used any such statement against her in a criminal proceeding.  Moreover, even if

Plaintiff did give an involuntary custodial statement, the court adjourned the charges against her

in contemplation of dismissal and eventually dismissed them.  Accordingly, no remedy exists to

correct this alleged procedural infirmity.

As such, the Court grants Defendants' motion for summary judgment as to Plaintiff's

fourth cause of action.


**F.**      **Defamation under section 1983**

Plaintiff also alleges that Defendant Kruger's "false implication" regarding her "mental

instability" "caused undue abuse of process, intentional infliction of emotional distress, excessive force and false arrest."  *See* Amended Complaint at 6.  Moreover, Plaintiff claims that "Deputy Kruger is not a licensed Psychologist, which supports my claim of defamation of character."  *See id.*

Generally, defamation is an issue of state law, not federal constitutional law; and, therefore, in most circumstances, a plaintiff cannot maintain a defamation action pursuant to section 1983.  *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citations omitted).  Despite this obstacle, relief for defamation is still available under the "stigma plus" doctrine, "which in limited circumstances provides a remedy for government defamation under federal constitutional law."  *Id.* (citation omitted).

"To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Id.* (quotation omitted).  "The state-imposed burden or alteration of status must be '*in addition* to the stigmatizing statement.'"  *Id.* (quotation omitted).  "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process."  *Id.* (citations omitted).

Some additional burdens that satisfy the "plus" prong under the "stigma plus" doctrine include the deprivation of a plaintiff's property, the termination of government employment, or direct interference with a plaintiff's business.  *See id.* (citations omitted).  "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus'

under the 'stigma plus' doctrine."  *Id.* (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

With these guidelines in mind, it is clear that Plaintiff's allegations fail to state a claim for defamation under federal law.  Even assuming that Defendant Kruger's statements regarding Plaintiff's "mental instability" are defamatory, Plaintiff has failed to allege the additional state-imposed burden necessary to invoke the "stigma plus" doctrine.  Although Plaintiff alleges that she lost her job, she asserts that this was because of the numerous court appearances she had to attend, not because of the allegedly defamatory statements.  *See* Amended Complaint at 7.  Such assertions are insufficient to establish "stigma plus."  *See, e.g., Sadallah*, 383 F.3d at 38-39 (holding that allegations that the defendants' statements caused the plaintiffs "'damage not only to their business reputation, but [also the deprivation] of good will in their business,' and that this 'has served to discourage customers from availing themselves of the Plaintiffs' facility,'" do not constitute the necessary "plus" (quotation omitted)).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's federal defamation claim.

## G.    Plaintiff's state-law claims

Plaintiff asserted supplemental state claims for false arrest, malicious prosecution, assault, defamation, trespass, abuse of process, and intentional infliction of emotional distress.  *See* Amended Complaint at 6-7.

District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same

case or controversy under Article III of the Constitution.  *See* 28 U.S.C. § 1367(a).  Application

of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of

comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of

state law."  *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979)

(citation omitted).

> New York General Municipal Law § 50-e(1)(a) provides, in relevant part, that

>> [i]n any case founded upon tort where a notice of claim is required
>> by law as a condition precedent to the commencement of an action
>> or special proceeding against a public corporation, . . . or employee
>> thereof, the notice of claim shall comply with and be served in
>> accordance with the provisions of this section within ninety days
>> after the claim arises . . . .

N.Y. Gen. Mun. Law § 50-e(1)(a).

Moreover, when the action is against a county, or any employee thereof, for personal

injury, the notice of claim must comply with the requirements set forth above, and the action

"shall be commenced within one year and ninety days after the happening of the event upon

which the claim is based."  N.Y. Gen. Mun. Law § 50-i(1).[9]

In the present matter, Plaintiff commenced this action against Defendants as municipal

employees, alleging both state and federal claims.  She commenced this action on June 12, 2007,

alleging claims based on incidents that occurred on September 8-10, 2004.  *See generally*

Amended Complaint.  Since Plaintiff filed this action nearly three years after the underlying

events transpired and because she failed to file a notice of claim, the Court grants Defendants'

motion for summary judgment with respect to her state-law claims.

---

[9] This notice-of-claim requirement applies only to state-law claims.  *See Ahern v. Neve*,
285 F. Supp. 2d 317, 321 (E.D.N.Y. 2003) (citation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part;[10] and the Court further

**ORDERS** that Plaintiff shall notify the Court and opposing counsel **in writing** within **twenty (20) days** from the date of this Memorandum-Decision and Order whether or not she intends to pursue the remaining causes of action; and the Court further

**ORDERS** that, if Plaintiff does **not** notify the Court and opposing counsel of her intent with regard to this action within **twenty (20) days** from the date of this Memorandum-Decision and Order, the Court will place this action on its **next available** dismissal calendar pursuant to Local Rule 41.2(a); and the Court further

**ORDERS** that, if Plaintiff notifies the Court and opposing counsel that she does **not** intend to pursue her remaining claims, the Clerk of the Court shall enter judgment in favor of Defendants with prejudice, without further Order of this Court; and the Court further

**ORDERS** that, if Plaintiff notifies the Court and opposing counsel that she **does** intend to pursue her remaining claims, Defendants' counsel shall initiate a telephone conference, using a professional conferencing service, with the Court and Plaintiff on **May 10, 2010 at 9:30 a.m.** to discuss a schedule for the trial of this matter.

**IT IS SO ORDERED.**

---

[10] As a result of this Memorandum-Decision and Order, the following federal causes of action remain: (1) unlawful seizure/false arrest and imprisonment; (2) unlawful search; and (3) excessive force.

Dated: March 31, 2010
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge