UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANICE E. BURKE,

                                                  **Plaintiff,**

                        v.                                     5:07-CV-624
                                                                  (FJS/DEP)

CICERO POLICE DEPARTMENT; DEPUTY K.
KRUGER, Deputy for Cicero Police Department;
DEPUTY BOLLINGER, Deputy for Cicero Police
Department; DEPUTY WAFER, Deputy for Cicero
Police Department; GILLETTE ROAD MIDDLE
SCHOOL; and AUDREY GANGLOFF, Principal
of Gillette Road Middle School,

                                                  **Defendants.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**ALEXANDER & CATALANO, LLC**        **PETER J. ADDONIZIO, ESQ.**
115 East Jefferson Street
Suite 403
Syracuse, New York 13202-2537
Attorneys for Plaintiff

**ONONDAGA COUNTY**                 **CAROL L. RHINEHART, ESQ.**
**DEPARTMENT OF LAW**
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, New York 13202
Attorneys for Defendants Kruger,
Bollinger and Wafer

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 12, 2007, Plaintiff filed this action under 42 U.S.C. § 1983 alleging violations of

her civil rights resulting from incidents that occurred on September 8 and September 10, 2004. In her amended complaint, Plaintiff asserts eight causes of action, in which she alleges, among other things, false arrest, malicious prosecution, excessive force, illegal search and seizure, and abuse of process. On September 30, 2008, the Court granted Defendant Cicero Police Department's motion to dismiss and granted Defendant Gillette Road Middle School's and Defendant Gangloff's motions for summary judgment. *See* Dkt. No. 34. On March 31, 2010, the Court granted in part and denied in part Defendants Kruger, Bollinger, and Wafer's motion for summary judgment. *See* Dkt. No. 50. Specifically, the Court dismissed all pending claims except for Plaintiff's unlawful seizure/false arrest and imprisonment, unlawful search, and excessive force claims against Defendants Kruger, Bollinger, and Wafer ("Defendants").[1] *See id.* at 26 n.10.

The Court held a bench trial on September 13 and 14, 2010. At the trial, the Court heard testimony from Plaintiff, Plaintiff's sister Doretha Burke, Plaintiff's brother Joseph Burke, Jr., Defendant Kruger, Defendant Bollinger, Defendant Wafer, Defendant Gangloff, Nancy Noice-Baron, Richard Suphan, and Andrew Keegan. At the conclusion of the trial, Defendants made a motion pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, arguing that Plaintiff had failed to establish liability. The Court reserved decision on that motion and directed the parties to file proposed findings of fact and conclusions of law.

Having reviewed the parties' submissions as well as the trial transcript, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules

---

[1] In her amended complaint, Plaintiff asserted that Defendants Kruger, Bollinger and Wafer were employees of the Cicero Police Department. They are, however, Deputy Sheriffs in the Onondaga County Sheriff's Department.

of Civil Procedure.

## II. FINDINGS OF FACT

1. Plaintiff was her niece's guardian when her niece attended Gillette Road Middle School during the 2004-2005 academic school year.

2. On September 8, 2004, at approximately 2:20 p.m., Plaintiff arrived at the school and requested that school officials release her niece from school at that time because she needed to drop her off at home prior to reporting to work at 3:00 p.m.

3. Plaintiff's niece was not in her classroom when Plaintiff arrived to pick her up; and, therefore, Plaintiff requested that someone contact her niece using the school's public address system.

4. When the school official refused to call Plaintiff's niece over the public address system, Plaintiff then asked Defendant Kruger, the Onondaga County Sheriff's Department's liaison officer to the school, to allow her to proceed down the hall and through a door at the end of the hall to the back of the school, where her niece was located. Defendant Kruger told Plaintiff that it was against school policy to allow parents to roam the halls while classes were in session. Nonetheless, Plaintiff attempted to proceed down the hall; and Defendant Kruger blocked her path.

5. Shortly thereafter, a staff member located Plaintiff's niece; and Plaintiff and her niece left the premises. Prior to leaving, Plaintiff indicated that she would pick up her niece at 2:30 p.m. every day for the remainder of the year, despite the fact that classes did not end until 2:40 p.m.

6. At some point after Plaintiff left the school with her niece on February 8, 2004, and prior to September 10, 2004, Defendant Gangloff, Principal of Defendant Gillette Road Middle School, telephoned Plaintiff and attempted to schedule a meeting with her to discuss her request to pick up her niece early every day. Plaintiff indicated that she could not meet with Defendant Gangloff that week.

7. On September 10, 2004, at approximately 12:10 p.m., Defendants Kruger, Bollinger and Wafer went to Plaintiff's residence to issue her an appearance ticket for Obstruction of Governmental Administration in the Second Degree and Harassment in the Second Degree.

8. When Defendants asked Plaintiff to come outside to discuss the incidents of September 8, 2004, she refused. Defendants then told Plaintiff that she was under arrest and that she needed to step outside so that they could issue her an appearance ticket.

9. When Plaintiff refused, Defendants attempted to gain entry into her residence. After these attempts proved unsuccessful, Defendant Wafer kicked in Plaintiff's dead-bolted front door. As Defendant Wafer attempted to gain entry, Defendant Bollinger moved to the back of Plaintiff's residence to make sure that Plaintiff could not escape through the back door.

10. Upon entry, Defendants informed Plaintiff that she was under arrest and ordered her to drop the telephone that was in her hand.

11. Plaintiff struggled when Defendant Wafer attempted to place her in handcuffs and, thereafter, complained that the handcuffs were secured too tightly.

12. Plaintiff was taken outside, and Defendant Wafer did a "pat down" search prior to placing Plaintiff in the patrol car.

13. Once in the patrol car, Defendants gathered information from Plaintiff and made

arrangements for her niece.

14. Defendant Wafer read Plaintiff her *Miranda* warnings at approximately 12:50 p.m., and Plaintiff refused to provide any statements.

15. Plaintiff was arraigned at 3:00 p.m. at the Town of Cicero Court and was charged with Obstructing Governmental Administration in the Second Degree, Harassment in the Second Degree, and Resisting Arrest.

16. On or about November 15, 2006, Plaintiff accepted an adjournment in contemplation of dismissal of the criminal charges, and the charges were dismissed on May 14, 2007.

17. Plaintiff did not treat with any medical providers for any injury, either physical or emotional, alleged to be the result of her arrest.

18. At the time of her arrest, Plaintiff was employed as a machinist for New Venture Gear.

19. Plaintiff failed to establish that she lost her job or guardianship of her niece as a result of Defendants' action.

### III. CONCLUSIONS OF LAW

**A.      Relief under 42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quotation omitted). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent

damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

### B. Unlawful seizure/false arrest and imprisonment

In Plaintiff's third, fifth, and sixth causes of action, she alleges claims for unlawful seizure/false arrest and imprisonment. *See* Amended Complaint at 5-7. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal and other citations omitted). Under both New York law and the Fourth Amendment to the United States Constitution, the elements of an action for false arrest are that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted).

Defendants do not contest the first three elements. Accordingly, the only question is whether Plaintiff's warrantless arrest inside her home was "privileged" or "justified." "'[J]ustification may be established by showing that the arrest was based on probable cause[.]'"

*Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted). "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation omitted). Probable cause alone, however, does not justify a warrantless arrest in a home. *See Loria v. Gorman*, 306 F.3d 1271, 1283-84 (2d Cir. 2002).

A warrantless entry into a home requires "exigent circumstances" justifying the intrusion. *See id.* The test for determining whether exigent circumstances justify a warrantless entry into a home is an objective one, which asks "'whether law enforcement agents were confronted by an "urgent need" to render aid or take action.'" *United States v. Gordils,* 982 F.2d 64, 69 (2d Cir. 1992) (quotation omitted).

In *Gordils,* the Second Circuit set forth the following six factors for courts to use as guidelines for determining whether or not such exigent circumstances exist:

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause . . . to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry."

*Id.* (quotation omitted). The court noted, however, that these factors were not exhaustive and that the presence or absence of any one factor was not conclusive. *See id.* (quotation omitted). Therefore, under certain circumstances, the presence of a single factor will suffice, while at other times it will require a combination of several of these factors. *See United States v. MacDonald,*

916 F.2d 766, 770 (2d Cir. 1990) (citations omitted).

Although Defendants clearly had probable cause to believe that Plaintiff committed offenses on September 8, 2004, and that she was in her house when they arrived there, no other factors weigh in favor of finding that Defendants' actions were reasonable. As mentioned, Plaintiff was charged with a nonviolent misdemeanor and violation. In such circumstances, courts are loathe to find warrantless arrests in a home reasonable. *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) (noting "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor"); *see also Loria*, 306 F.3d at 1285 (holding that obstruction of government administration is not a "sufficiently grave or violent [offense] to provide the police with reason to ignore the warrant requirement"). As to the second factor, it is apparent that Defendants had no objectively reasonable belief that Plaintiff was armed. Although Defendants testified that they could not see her hands while she was standing behind her screen door, any potentially dangerous situation disappeared the instant that Plaintiff closed the primary door and retreated into her home.

As to the fifth factor, Plaintiff posed no serious risk of flight. Defendants admit that, prior to forcibly entering her home, Plaintiff stated that she was retreating into her house to make a phone call. Defendants also testified that, when they entered Plaintiff's home, she was, in fact, attempting to make a phone call. Such actions clearly do not show an intent to flee from the authorities. Finally, as to the sixth factor, Defendants admit that Defendant Wafer used force to enter Plaintiff's home.

Contrary to Defendants' assertions, "such a warrant-less arrest can form the basis of a

false arrest claim under 42 U.S.C. § 1983 even if probable cause is present." *Durney v. City of N.Y.*, No. 91-CV-3959, 1996 WL 1057148, *7 (E.D.N.Y. Oct. 25, 1996) (citing *Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991); *Dzinanka v. County of Suffolk*, 932 F. Supp. 59 (E.D.N.Y. 1996)).  It is without question that Defendants had probable cause to issue Plaintiff an appearance ticket and arrest her for the September 8, 2008 incident at the school.  Beyond that, however, Defendants failed to establish exigent circumstances to justify their forcible entry into Plaintiff's home to effect a warrantless arrest.  Plaintiff's refusal to exit her home to allow the officers to serve her with an appearance ticket is not an exigent circumstance justifying their conduct.

Based on the foregoing, the Court concludes that no exigent circumstances were present to justify Defendants' actions and that, therefore, Plaintiff has demonstrated, by a preponderance of the evidence, that Defendants unlawfully arrested her.[2]

---

[2] Plaintiff alleges in her fifth cause of action that, after she was arrested and handcuffed, she was "groped by a male officer on [her] front lawn in view of all [her] neighbors, when two female officers were available to perform the frisk." *See* Amended Complaint at 6.  Moreover, she claims that Defendants' actions "physically violated" her. *See id.* at 4.  As such, Plaintiff asserts that Defendants violated her Fourth Amendment rights in that any search was unreasonable because it was incident to an unlawful arrest and also because it was unreasonable to have a male officer conduct the search when a female officer was present.

"'[W]arrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)).  As with Plaintiff's False Arrest/Unlawful Seizure claim, no exigencies were present to render the warrantless search of her person reasonable.  Specifically, no evidence was offered at trial to support the assertion that Defendants' alleged fear for their safety was reasonable or that Plaintiff may have possessed a weapon.

Therefore, the Court concludes that Plaintiff has demonstrated, by a preponderance of the
(continued...)

**C.    Excessive force**

At trial, Plaintiff established that, after she refused to step outside or to allow Defendants into her house, Defendant Wafer kicked in her front door, grabbed the phone from her hand, threw the phone on the floor, and forcibly grabbed her right wrist and pulled it behind her back to place her in handcuffs.  Morever, Plaintiff established that she was in pain during her arrest and the day afterwards as a result of being handcuffed.

To establish a section 1983 claim for excessive force, a plaintiff has the burden of showing that, under the Fourth Amendment, the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation.  *See Anderson v. Branen*, 17 F.3d 552, 559-60 (2d Cir. 1994).  This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).

In the present matter, Plaintiff asserts two distinct theories to support her claim that Defendants employed excessive force while effecting her arrest.  First, Plaintiff asserts that, even if her arrest was lawful, Defendants used excessive force in effecting that arrest.  Regarding this first point, Plaintiff failed to establish that the force Defendants applied during the execution of the arrest was excessive.  According to Plaintiff's own testimony, Defendant Wafer "swatted" the

---

[2](...continued)
evidence, that Defendants' search of her person was unreasonable.

phone out of her hand, pulled her arms behind her back, and then placed her in handcuffs. Moreover, although Plaintiff asserts that Defendant Wafer made the handcuffs too tight, which caused her discomfort, Plaintiff failed to establish anything other than slight discomfort, which lasted no longer than one day after her arrest. Further, the photographs that Plaintiff entered into evidence show no visible sign of injury and actually demonstrate that the handcuffs were not so tight that Plaintiff was unable to move her arms while restrained.

Second, Plaintiff asserts that, because entry into her home to execute the arrest was illegal, any force used during the arrest is *per se* excessive. In *Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006), the Second Circuit clarified a prior decision in *Atkins v. New York City*, 143 F.3d 100 (2d Cir. 1998), and reiterated that the existence of an unlawful seizure does not necessarily mean that any use of force during such seizure is *per se* excessive and unlawful. *See Jones*, 465 F.3d at 62. More specifically, in *Jones*, the court rejected the argument that force used during an arrest without probable cause is *per se* excessive and, instead, emphasized that the same reasonableness standard articulated in *Graham* applies to those situations as well:

> There was . . . no need for this Court in *Atkins* to reach the question of whether any force used in an arrest lacking probable cause is *per se* excessive. Such a construction would read the highly fact-specific situation in which *Atkins* arose too broadly because it would appear to suggest that any force employed by a police officer would be unlawful so long as probable cause did not exist, even if the detainee had threatened the officer with significant harm. We are further mindful that the Supreme Court held in *Graham* that "all claims that law enforcement officers have used excessive force . . . should be analyzed under the . . . 'reasonableness' standard" of the Fourth Amendment, thereby establishing a general requirement. 490 U.S. at 395, 109 S. Ct. 1865 (emphasis in original). The *Atkins* court clearly did not intend to create or substitute a new standard for arrests lacking probable cause, and the reasonableness test established in *Graham* remains the applicable test for determining when

>>excessive force has been used, including those cases where officers allegedly lack probable cause to arrest.

*Id.*

Although the issue in this case is not a lack of probable cause to arrest but rather whether the entry into Plaintiff's residence to make a warrantless arrest was lawful, the *Jones* holding applies with equal force. In other words, the Court rejects Plaintiff's position that, because entry into her home was illegal, any force used was illegal and excessive.

As discussed, if Defendants had a warrant for Plaintiff's arrest, the amount of force that they used would have been reasonable. *See Esmont v. City of N.Y.*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (holding that, "[f]requently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out" (citation omitted)). Therefore, the Court finds that Plaintiff has failed to establish, by a preponderance of the evidence, that Defendants' actions amounted to excessive force.

**D.    Personal involvement/failure to intervene**

In their motion for a directed verdict, Defendants argued that Defendant Kruger and Defendant Bollinger had no personal involvement in the alleged unconstitutional activity. Moreover, Defendant Kruger and Defendant Bollinger asserted that they had no reasonable opportunity to intervene in the events that transpired and, therefore, could not be held liable.

It is true that the "personal involvement of the defendant in the conduct that allegedly violates the plaintiff's constitutional rights is generally a prerequisite for liability under a § 1983 claim." *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999) (citation omitted). Nevertheless, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to

-12-

protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson*, 17 F.3d at 557 (citations omitted). Thus, "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official[.]" *Id.* (citation omitted).

"In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.* (citation omitted). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* (citation omitted).

In the present matter, both Plaintiff and Defendant Wafer testified that Defendant Wafer had to kick Plaintiff's front door multiple times before it gave way so that Defendants could enter her home. During that time, it is clear that Defendant Kruger could have intervened and prevented Defendant Wafer from succeeding in his attempts to kick in Plaintiff's door. Moreover, Defendant Bollinger testified that, when it became clear that Defendant Wafer was going to enter Plaintiff's home to effect her arrest, Defendant Bollinger ran to the back of Plaintiff's home to ensure that Plaintiff could not escape from the rear door. Instead of securing the home for fear that Plaintiff might escape, Defendant Bollinger clearly could have intervened to prevent Defendant Wafer from violating Plaintiff's constitutional rights.

Based on the foregoing, the Court finds that both Defendant Bollinger and Defendant Kruger had a reasonable opportunity to intervene to prevent these constitutional violations from occurring and failed to do so.

**E.     Damages**

It is axiomatic that "[compensatory money] [d]amages are properly awarded for civil rights violations when the plaintiff has suffered an actual loss as a result of a constitutional deprivation." *Henry v. Gross*, 803 F.2d 757, 768 (2d Cir. 1986) (affirming compensatory damages award to plaintiff challenging legality of public assistance benefits program under New York state laws and 42 U.S.C. § 1988).

The court may also award Plaintiff punitive damages "if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involve *reckless or callous indifference to the federally protected rights of others*.'" *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001) (quotation omitted). "An award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 52, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

Plaintiff established that, as a result of Defendants' conduct, she missed work on September 10, 2004, and several days thereafter for required court appearances resulting from her criminal charges. As such, the Court finds that Plaintiff missed a total of five days of work because of Defendants' conduct. Moreover, Plaintiff established that, in 2003, she earned $57,961 and a similar income in the following year. *See* Plaintiff's Trial Exhibit No. 6. This salary breaks down to roughly $241.50 per work day.[3] Accordingly, the Court finds that Plaintiff

---

[3] On average, there are forty-eight work weeks in a given calendar year, taking into account normal holidays which are usually precluded and allowing for vacation and sick time. As such, assuming a five-day work week, the average full-time employee works 240 days in a calendar year.

is entitled to **$1,207.50** in lost wages and that all three Defendants are jointly and severally liable for this amount.

Although Plaintiff alleges that she is entitled to medical expenses, she failed to submit any evidence that she received any medical treatment for her alleged physical or psychological conditions. Plaintiff did, however, establish that she is entitled to compensatory damages for her emotional distress and pain and suffering. *See Walz v. Town of Smithtown*, 46 F.3d 162, 169-70 (2d Cir. 1995) (noting that civil rights plaintiffs are entitled compensatory damages for their emotional distress resulting from the defendants' unconstitutional conduct (quotation and other citation omitted)). Plaintiff established that, apart from the physical pain she experienced during the arrest and for the following day, she suffered emotional distress and embarrassment because of Defendants' actions. For example, Plaintiff testified that Defendant Wafer pulled her out of her house and frisked and handcuffed her in front of her house and in full view of all of her neighbors – all of which occurred without justification for a warrantless search of Plaintiff's person. Thereafter, Plaintiff was forced to remain in a jail cell for several hours until her arraignment.

These events are, of course, in addition to the fact that Defendant Wafer forcibly entered Plaintiff's home to effect a warrantless arrest for conduct which clearly did not justify the forced warrantless entry into her home. Plaintiff's brother testified about the emotional toll that these events had on Plaintiff's life. Similarly, Plaintiff's sister testified that, after these events, Plaintiff was no longer her "vivacious" self, that she was preoccupied with these events, that she was insecure, that she seemed "paranoid" about her surroundings, and that she no longer felt that her home was a "safe place."

The evidence at trial also established that, prior to Defendants' actions, Plaintiff had shown signs of instability. In May of 2004, Plaintiff's sister Doretha Burke filed a petition to remove Plaintiff as her niece's guardian. *See* Transcript of Trial Testimony of Doretha Burke dated December 13, 2010 ("Doretha Burke Tr."), at 112. In the petition, Doretha indicated that she believed that Plaintiff was sometimes emotionally abusive to her niece and that Plaintiff had difficulty working with every school that the child attended. *See id.* at 116-18. Moreover, Doretha indicated that Plaintiff often seemed paranoid and believed that she was being followed. *See id.* at 118-19.

Additionally, Plaintiff's brother, Joseph Burke, testified that, prior to this incident, Plaintiff filed a sexual harassment lawsuit against her employer. *See* Transcript of Trial Testimony of Joseph Burke dated December 13, 2010 ("Joseph Burke Tr."), at 102-104. Mr. Burke testified that, as a result of this lawsuit and Plaintiff's behavior, he believed that she should no longer be her niece's guardian. *See id.* Mr. Burke discussed that Plaintiff's work situation made her depressed and that it created a stressful situation in her home. *See id.* at 104. Further, Mr. Burke informed the Court that, at the time, Plaintiff exhibited paranoid behavior as a result of her work situation and that he believed that she should meet with a "counselor" to better her "emotional well-being." *See id.* at 105-06.

The Court finds that, although the evidence at trial established that Plaintiff was a "difficult" person and that she was undergoing emotionally unsettling events in other areas of her life, the evidence also demonstrated that Defendants' unjustified actions caused her to suffer emotional distress and pain and suffering for which she is entitled to relief. Therefore, the Court concludes that Plaintiff is entitled to **$10,000** in compensatory damages for her emotional

distress and pain and suffering. The Court further finds that Defendant Wafer bears more responsibility for these injuries than either Defendant Bollinger or Defendant Kruger; and, therefore, the Court apportions these damages as follows: Defendant Wafer – $5,000, Defendant Bollinger – $2,500, and Defendant Kruger – $2,500. *See O'Neill v. Krzeminski*, 839 F.2d 9, 12-13 (2d Cir. 1988) (allowing the courts to apportion compensatory and punitive damages among individual defendants based on the culpability of their respective conduct). Finally, the Court concludes that Defendant Wafer demonstrated a reckless and callous indifference to Plaintiff's constitutional rights and that, therefore, he is liable to Plaintiff for punitive damages in the amount of **$10,000,** an amount that the Court finds sufficient to deter Defendant Wafer from engaging in similar conduct in the future, while not being "'oppressive or patently excessive[.]'" *Blissett v. Eisensmidt*, 940 F. Supp. 449, 457 (N.D.N.Y. 1996) (quotation omitted).

## IV. CONCLUSION

After reviewing the trial transcript, the parties' post-trial submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for a directed verdict is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment against Defendants in favor of Plaintiff in the following amounts:

> Compensatory damages for lost wages in the amount of **$1,207.50** against Defendants Kruger, Bollinger and Wafer, jointly and severally;
>
> Compensatory damages for emotional distress and pain and suffering in the

following amounts:

        Defendant Kruger    **$2,500**

        Defendant Bollinger  **$2,500**

        Defendant Wafer     **$5,000**;

Punitive damages in the amount of **$10,000** against Defendant Wafer.

**IT IS SO ORDERED.**

Dated: March 30, 2011
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge